IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Criminal Action No. 1:24-cr-00054-SKC

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT COLE,

    Defendant.

---

ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS (DKTS. 28 & 29)

---

    Mr. Cole was indicted by a grand jury on one count of bank robbery in violation of 18 U.S.C. § 2113(a). Prior to his indictment, and relevant here, Mr. Cole confessed to the bank robbery during an approximate 54-minute *Mirandized* custodial interrogation, the victim teller identified Mr. Cole from a six-photo array, and Mr. Cole's federal probation officer reviewed surveillance video of the robbery and informed law enforcement that she believed the bank robber shown in the video was Mr. Cole.

    Mr. Cole's Motion to Suppress Statements (Dkt. 28) and Motion to Suppress Identifications (Dkt. 29) are now before the Court. The Court has viewed the 54-

minute video[1] of Mr. Cole's custodial interrogation at issue with his Motion to Suppress Statements and has reviewed the photo array at issue with his Motion to Suppress Identifications. Based on the Court's review of these and the related exhibit attachments submitted by the parties, the Court does not find an evidentiary hearing is necessary on either motion.

**1.      Motion to Suppress Statements**

Where the government seeks to use a defendant's in-custody confession as evidence against him, two distinct but related doctrines are involved. The first involves *Miranda v. Arizona*, 384 U.S. 436 (1966), which established procedural safeguards intended to inform suspects of their Fifth Amendment privilege against compelled self-incrimination and to protect against the "inherently compelling pressures of custodial interrogation." *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010) (quotation omitted). Statements obtained in contravention of *Miranda* are inadmissible in the government's case-in-chief and must be suppressed. *See, e.g.*, *United States v. Rambo*, 365 F.3d 906, 911 (10th Cir. 2004).

The second concerns a suspect's right to due process, which "extends beyond *Miranda* to ensure that the confession is voluntary" and not the product of police coercion. *Murphy v. City of Tulsa*, 950 F.3d 641, 652 (10th Cir. 2019). Involuntary confessions—*i.e.*, those procured through police coercion—are inadmissible and must

---

[1] The entire video runs about 105 minutes. The interrogation leading to Mr. Cole's confession runs approximately 54 minutes.

also be suppressed, even if the suspect first knowingly, voluntarily, and intelligently waived their *Miranda* rights. *See, e.g., United States v. Young*, 964 F.3d 938, 946 (10th Cir. 2020) ("A suspect cannot be subjected to invalid coercion to obtain a confession just because he earlier was given a valid *Miranda* warning." (quoting *United States v. Bustillos-Munoz*, 235 F.3d 505, 517 n.8 (10th Cir. 2000)). In other words, "even when a confession is not obtained in violation of *Miranda*, it must nonetheless be voluntary to be admissible." *United States v. Cash*, 733 F.3d 1264, 1280 n.12 (10th Cir. 2013). Mr. Cole moves on this latter ground to suppress the statements he made during his February 8, 2024, custodial interrogation.

The due-process voluntariness test examines "'whether a defendant's will was overborne' by the circumstances surrounding the giving of the confession." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "If his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." *United States v. Pettigrew*, 468 F.3d 626, 637 (10th Cir. 2006) (quoting *United States v. Lopez*, 437 F.3d 1059, 1467 (10th Cir. 2006)) (cleaned up). In determining whether a defendant's inculpatory statements were voluntary—accounting for "both the characteristics of the accused and the details of the interrogation"—courts consider the following factors under a totality-of-the-circumstances test: (1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his

constitutional rights; and (5) whether the defendant was subjected to physical punishment. *See Schneckloth*, 412 U.S. at 226; *see also United States v. Minjares–Alvarez*, 264 F.3d 980, 985 (10th Cir. 2001).

After Mr. Cole's arrest on suspicion of bank robbery, Task Force Officers Cory Lambert and Jared Purdy interviewed Mr. Cole at their office. The interrogation leading up to his confession lasted about 54 minutes. The video of the interrogation shows Mr. Cole being advised of, and waiving, his *Miranda* rights in writing before answering questions of the officers without his attorney present. The interrogation began at about 5:14 P.M. Central to the Motion, at least twice during the interview Officer Purdy mentioned the benefit of "acceptance of responsibility" to Mr. Cole.

The first time, after explaining to Mr. Cole that there was "overwhelming evidence" against him, at about 41 minutes into the interview, Officer Purdy stated:

> It's not by chance that we're in the room talking to you. What this is, is the opportunity for you to grab that acceptance opportunity. Right? This is the opportunity for you to handle it the right way. To own up to it, to be a man about it and say, "You know what? Yeah. Things were going south for me, and I made a bad decision, but I'm going to make it right right now. Okay? We're giving you that opportunity. The case is—it's not a "who dunnit" case, right? We knew who you were that night. . . . So, it's your choice, but this is your opportunity.

The second time, at about 5:59 P.M., Officer Purdy said: "I see it all the time. It makes a huge difference. I mean, it's written into the federal system: Acceptance? Automatic deduction; 5Ks? Automatic deduction. You know this. The federal system is very cut-and-dry when it comes to these things." Mr. Cole noted the same was not true of the state system, and the officers reiterated that he had been arrested on a federal

4

charge. Mr. Cole confessed about 10 minutes later after he and the officers discussed Mr. Cole's recent car accidents, aspects of the bank robbery, some of the evidence the officers had obtained against him, the officers' additional requests to Mr. Cole to tell the truth, and their asking him why he robbed the bank.

Having reviewed the interrogation video, the Court does not find Mr. Cole's confession was involuntary. First, Mr. Cole was not hand-cuffed during the interview, which lasted only about 54 minutes. Both the officers' and his tone were calm and conversational throughout. Mr. Cole was lucid and responsive during the interview. Nothing occurred during the interview to suggest that his age (62 years old), level of intelligence, or education (he obtained his GED), rendered his statements to the officers involuntary, or that he suffered from a mental or emotional impairment that was exploited by the officers. *See Schneckloth*, 412 U.S. at 226.

Second, the video shows no evidence of any threat, coercion, or undue influence exercised by the officers over Mr. Cole—they advised him of his *Miranda* rights, which he waived voluntarily, and they did not subject him to any physical punishment. *Id.* And again, they remained calm and conversational. Moreover, Mr. Cole unfortunately is no stranger to the criminal justice system having been convicted of five robberies on the state level and three separate felony bank robberies at the federal level. Dkt. 19.

Third, while Officer Purdy's statements to Mr. Cole about acceptance of responsibility and how it works at the federal level were inaccurate, his statements

5

were innocuous considering the plethora of subjects the officers and Mr. Cole discussed over the course of the 54-minute interrogation. *See Frazier v. Cupp*, 394 U.S. 731, 739 (1969) ("The fact that the police misrepresented the statements that Rawls had made is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible."); *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998) (defendant's inculpatory statements were admissible even though officer made "false statements about fingerprint evidence found" at the crime scene because "such misrepresentations, without more, do not render an otherwise voluntary confession involuntary").

And the Court does not find Officer Purdy promised Mr. Cole leniency in exchange for his confession. Rather, he offered his ill-informed understanding of how acceptance of responsibility operates at the federal level should Mr. Cole choose to confess. *See, e.g., United States v. Figueroa*, No. 99-CR-121 W, 1999 WL 33292465, at *7 (D. Utah Nov. 30, 1999) ("Advice on the sentencing benefit as to acceptance of responsibility is not improper. The Supreme Court has recognized that confession is a legitimate factor to consider in imposing a sentence. . . . The Agent did not make a promise. He gave reasonable advice. Acceptance of responsibility is something a suspect might rationally consider in determining to make a statement. It does not render a confession involuntary.") (cleaned up); *see also United States v. Wagner*, No. 17-40097-01-DDC, 2018 WL 3458520, at *6 (D. Kan. July 18, 2018), *aff'd*, 951 F.3d 1232 (10th Cir. 2020) ("A promise of leniency must be more than a 'limited

6

assurance'—a permissible interrogation tactic. . . . To be impermissible, it must 'critically impair a defendant's capacity for self-determination.'") (cleaned up).

Considering the totality of the circumstances, the Court finds Mr. Cole's confession was voluntary and the motion to suppress must be denied. The Court has considered Mr. Cole's arguments regarding his purported distress around his recent car accidents, medical issues, and financial concerns, which he discussed with the officers during his interrogation. But, having analyzed the video and the totality of the circumstances described above, the Court does not find these conditions rendered Mr. Cole particularly feeble of mind or emotion, or his confession involuntary.

**2.   Motion to Suppress Identifications**

The day after the bank was robbed, law enforcement identified Mr. Cole as the bank robber from surveillance photographs and his federal probation officer identified him from the surveillance video. The victim teller also identified him as the bank robber one week after the robbery from a six-photograph array. Mr. Cole moves to suppress the victim teller's photo-array identification, and his probation officer's identification of him on the video.

### A.   The Victim Teller's Identification Through a Photo Array

The Supreme Court has recognized "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). When "there is a very

7

substantial likelihood of irreparable misidentification, the judge must disallow presentation of the evidence at trial." *Id.* (cleaned up).

To determine whether an identification violates a defendant's due process rights, the reviewing court must undertake a two-part inquiry. *Grubbs v. Hannigan*, 982 F.2d 1483, 1489–90 (10th Cir. 1993). The court must first decide whether the identification procedure was "unnecessarily suggestive." *Id.* at 1489 (citing *Archuleta v. Kerby*, 864 F.2d 709, 711 (10th Cir. 1989)). If so, the court "must then weigh the corrupting influence of the suggestive procedure against the reliability of the identification itself." *Id.* at 1489–90 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). Mr. Cole has the initial burden of proving that the identification procedure was unduly suggestive. *English v. Cody*, 241 F.3d 1279, 1282 (10th Cir. 2001). The Court does not find Mr. Cole has met his burden.

The investigating officers obtained video footage of the robbery from several of the bank's security cameras.[2] Police took screenshots of the robber from that footage and submitted the images to the Colorado Department of Revenue Division of Motor Vehicles (DMV) for identification of potential suspects using the DMV's facial recognition software. The software returned a match to Mr. Cole's recent driver's license photograph taken at the DMV.

---

[2] This factual summary is taken from the parties' respective briefs and applicable exhibits, to include Dkts. 35-7, 35-8 and 35-9.

Eight days after the robbery, on February 7, 2024, officers presented a six-image photographic array to the victim teller. The officer who prepared the array, Officer Monahan, used Mr. Cole's driver's license photo obtained through the facial recognition software and then used the "picture link system" which returned 4,000 photographs for black males that matched Mr. Cole's race, gender, eye color, and age within two years. The officer then included "bald," which lowered the number to 200. Officer Monahan then manually selected the remaining five filler images. When doing so, he noted that the driver's license photo of Mr. Cole had a white background, so he included a filler photo with a white background. The other four photographs had backgrounds with differing shades of gray.

Mr. Cole's photograph was placed in position five of six. Detective Monahan printed out a copy of the photographic lineup and gave it to Officer Lambert. Officer Lambert then enlisted the help of Officer Singapuri. Officer Singapuri had not been involved in the original bank robbery call and he had no information about the case. These two officers then met with the victim teller, where Officer Lambert asked her to read the following advisement:

\\
\\
\\
\\
\\

> In a moment, I am going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. The fact that the photos are being shown to you should not cause you to believe or guess that the guilty person has been caught. You do not have to identify anyone. It is just as important to free innocent persons from suspicion as it is to identify those who are guilty. The investigation of this crime will continue regardless of whether or not you make an identification. Please keep in mind that hair styles, beards, and moustaches are easily changed. Also, photographs do not always depict the true complexion of a person - it may be lighter or darker than shown in the photo. You should pay no attention to any markings or number that may appear on the photos. Also pay no attention to whether the photos are in color or black and white, or any other difference in the type or style of the photographs. You should study only the person shown in each photograph. Please do not talk to anyone other than police officers while viewing the photos. You must make up your own mind and not be influenced by other witnesses, if any. When you have completed viewing all the photos, please tell the investigator whether or not you can make identification. Please do not indicate in any way to other witnesses that you have or have not made identification.

Dkt. 35-9. After she read and indicated she understood the advisement, Officer Lambert left the room and Officer Singapuri showed the victim teller the photographs one at a time. The victim teller subsequently identified Mr. Cole as the suspect, circling "Confident" as her degree of confidence in her identification.

To determine whether a photographic array is impermissibly suggestive, courts look at several factors including "the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves." *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994) (citation omitted). Considering these factors, the Court does not find Mr. Cole's photo array was impermissibly suggestive.

10

The Tenth Circuit has not found six-photograph arrays to be impermissibly suggestive based on the size alone. *Id.* ("[C]ourts have held that a photo array with as few as six pictures is not per se unconstitutional."); *see also United States v. Thurston*, 771 F.2d 449, 453 (10th Cir.1985) (identification procedure not unduly suggestive where defendant was the only one in six photographs to have a beard and whose hair was braided). When officers use a smaller number of photographs in an array, however, the differences among the photographs "must be scrutinized for suggestive irregularities." *Sanchez*, 24 F.3d at 1263.

Mr. Cole argues his photo stands out because of its white background, image content and quality, and its unique selection by facial recognition software. But the Court does not find that these or any differences between his photo and the other five cause this array to be impermissibly suggestive. Mr. Cole's photo was not the only one of the six with a white background. The fact that the individual with the other white background had facial hair is of no moment considering the advisement provided the victim teller before she reviewed the array. Dkt. 35-9 ("Please keep in mind that hair styles, beards, and moustaches are easily changed.").

Moreover, each photo depicts bald (or mostly bald) headed men, all African American with similar features and expressions, and around the same age and with blank backgrounds. *See, e.g.*, *United States v. Shoels*, 685 F.2d 379, 385 (10th Cir. 1982) ("All seven photographs pictured black men in the same age group with similar complexions and facial features."); *Thurston*, 771 F.2d at 453 (six-photo array not

11

impermissibly suggestive where defendant's general complexion and facial profile resembled the filler subjects notwithstanding defendant was the only one pictured with a beard and braided hair); *cf. United States v. Ruiz*, --- F.4th ---, 2024 WL 4194467, at *9 (10th Cir. Sept. 16, 2024) (Rossman, J., concurring) (discussing the suggestive nature of a six-photo array where defendant's photo was "significantly darker, he was the only one pictured with a face mask—indicating he had been recently arrested, during the COVID-19 pandemic—and his photo was the only one taken against a horizontal-line background.").

"[P]resented without comment on the details (as this array was), [the Court is] not persuaded that the differences in Defendant's picture would necessarily lead the eye of the unguided viewer to his photograph given that all of the depicted persons are very similar in their physical appearance." *Sanchez*, 24 F.3d at 1263; *see also* Dkt. 39-5 (advising the victim teller ". . . pay no attention to whether the photos are in color or black and white, or any other difference in the type or style of the photographs. You should study only the person shown in each photograph."). For these reasons, Mr. Cole has not met his burden to show the array given to the victim teller was impermissibly suggestive. *See United States v. Storey*, 97 F.3d 1465 (10th Cir. 1996) (Table) (unpublished) (finding six-photo array not fatally suggestive where identification witnesses received a pre-array advisement and despite defendant being the only one in the array smiling, the only one with full facial hair, and a darker background as compared to the other six photos).

12

### B.     The Probation Officer's Identification

After officers identified Mr. Cole from the facial recognition search with the DMV, they searched their databases and learned that Mr. Cole was then currently on federal supervised release. Based on this information, Officer Lambert contacted Mr. Cole's probation officer who indicated she had been supervising Mr. Cole since his release in late 2022. Officer Lambert informed her that he was investigating a bank robbery and sent her two photographs and a video of the suspect in the bank robbery. The probation officer stated that the person in the images "closely resembled" Mr. Cole and she offered that Mr. Cole has a medical issue with one of his legs which causes him to favor one leg awkwardly. Dkt. 29, p.3. Officer Lambert then reviewed the videos of the bank robbery and concluded himself that the robber "appear[ed] to favor one leg and ha[d] an awkward walk while approaching the teller station." *Id.*

Mr. Cole argues the identification by his probation officer must be suppressed because it was the product of unduly suggestive police conduct. The government responds that it does not intend to elicit the probation officer's testimony at trial regarding her prior, out-of-court identification. Dkt. 35, p.11 (The probation officer's "out of court identification of the defendant will only be inquired about if as a prior consistent statement, prior identification or under another rule of evidence if (sic)

13

becomes appropriate at trial after cross examination. Accordingly, the propriety of this testimony should be permitted if proper foundation is laid under Rule 701.").

Mr. Cole's argument to suppress the probation officer's out-of-court identification misses the mark. The probation officer was not a percipient witness to the bank robbery and law enforcement did not contact her in that capacity to make an identification of the robbery suspect in the way the victim teller did. They instead contacted her as part of their investigation after learning Mr. Cole was on federal probation. And they asked her to review the surveillance video of the robbery based on her familiarity with Mr. Cole as his probation officer. To be sure, in its Response, the government indicates it intends to call the probation officer at trial to offer her lay opinion of whether the individual shown in the videos and photographs from the bank robbery is Mr. Cole since she has supervised his release. *Id.* Generally, and without deciding the issue now, the Tenth Circuit has found such in-court identifications admissible under Fed. R. Evid. 701. *See United States v. Contreras*, 536 F.3d 1167, 1170 (10th Cir. 2008).

The Court reserves for trial a ruling on the admissibility of the probation officer's out-of-court or in-court identification of Mr. Cole under Fed. R. Evid. 701. Insofar as the Motion seeks to suppress the probation officer's out-of-court identification as impermissibly suggestive, the Motion is denied because the probation officer was not a percipient witness and the government does not intend to

14

offer that evidence at trial unless triggered by other evidence or testimony and only as may be allowed by the Federal Rules of Evidence.

\*       \*       \*

For the reasons shared above, the Motion to Suppress Statements and the Motion to Suppress Identifications are both DENIED.

DATED:  October 8, 2024

BY THE COURT:

_____
S. Kato Crews
United States District Judge

15